UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOHN WEST,<br><br>            Defendant. | Case No. 22-CR-298 (JMC) |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

In June 2022, Defendant John West threatened another man with a loaded firearm aboard a Metro train at the Gallery Place Metro Station in the middle of the day. He then fled from police and attempted to ditch the gun in a drainpipe in Shaw. He has accepted responsibility and is now before the Court to be sentenced for his unlawful possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1). For reasons that follow, the government respectfully recommends that the Court sentence the defendant to a term of **57 months' imprisonment**, to be followed by three years' supervised release. In support of its recommendation, the government respectfully submits this Memorandum in Aid of Sentencing.

**I.    FACTUAL BACKGROUND**

The factual proffer to which the defendant agreed as part of his May 18, 2023, guilty plea (ECF No. 23) establishes the following undisputed facts:

On June 27, 2022, at approximately 11:30 a.m. at the Gallery Place Metro Station, a subject (subsequently determined to be the defendant, John West) threatened a passenger ("Victim-1") with a firearm while aboard a Metro train.

Victim-1 exited the Metro at the Mount Vernon Square Metro Station and reported the incident to the station manager so that he could notify the Metro Transit Police Department (MTPD). Victim-1 reported that while aboard a Metro train at the Gallery Place Metro Station, in

the direction of Greenbelt, Victim-1 was standing in the doorway of the train and holding the train doors open when the defendant became upset and began exchanging verbal comments. According to Victim-1, the defendant then placed his hand on a black handgun and said words to the effect of, "I'll shoot you and stab you." Victim-1, in fear for Victim-1's life, responded, "You got it." Victim-1 also reported knowing the defendant from a previous job that they worked together at Howard University. Victim-1 described the subject as a Black male, balding, wearing a white tank top, a yellow construction vest, and work boots. Victim-1 further stated that the subject normally gets off at the Shaw–Howard Metro Station. A description of the subject was relayed to MTPD officers by radio.

Minutes later at the Shaw–Howard Metro Station, an MTPD officer observed a subject matching the description on the train platform. The officer attempted to stop the subject, at which time the subject, determined to be the defendant, John West, fled away from officers, out of the station and to the street.

Surveillance footage revealed that the defendant fled the station and continued to run up the 1700 block of 8th Street NW, which consists of multiple apartment buildings bordered by an alley to the east.

The defendant was located by MTPD officers a short time later the east alley, where he was detained and arrested. Additional surveillance footage revealed that the defendant removed the yellow construction vest, while still wearing the same white tank top, dark pants, and carrying the same large lunch bag as shown during his flight from the Shaw–Howard Metro Station moments before.

Importantly, surveillance footage also depicted the defendant in and around the entryway to 1709 8th Street NW moments prior to his arrest. After the defendant was arrested, the yellow

construction vest was found concealed inside of his lunch bag.

MTPD officers responding to the scene found a loaded firearm in a drainage pipe near the entrance to 1709 8th Street NW location. The firearm was determined to be a Ruger LC9S 9mm, semi-automatic firearm, bearing serial number 328-00591. At the time the firearm was recovered, it was loaded with ten (10) rounds of 9mm ammunition. The investigation also revealed that the firearm was previously reported stolen out of Fairfax County, Virginia, in July 2016.

The firearm and its magazine were submitted to the Federal Bureau of Investigation for DNA testing and analysis. Male DNA interpreted as originating from two individuals was obtained from the firearm. The DNA results from the firearm are 35 quintillion times more likely if the defendant and an unknown, unrelated person are contributors than if two unknown, unrelated people are contributors. Male DNA interpreted as originating from two individuals was also obtained from the magazine. The DNA results from the magazine are 3.2 trillion times more likely if the defendant and an unknown, unrelated person are contributors than if two unknown, unrelated people are contributors.

## II.     PROCEDURAL HISTORY

On September 8, 2022, a federal grand jury returned a two-count indictment charging the defendant with Unlawful Possession of Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1) (Count One), arising out of his possession of a privately manufactured firearm and 9mm ammunition on April 24, 2022; and Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1) (Count Two), arising out of his possession of a Ruger 9mm semi-automatic firearm

and ammunition on June 27, 2022. (ECF No. 1).

On May 18, 2023, the defendant pleaded guilty pursuant to a negotiated agreement.[1] (ECF No. 22). Under the agreement, the defendant pleaded guilty to Count Two, and the government agreed to seek dismissal of Count One (which the defendant acknowledged was based in fact) at the time of the sentencing. (ECF No. 22 at 1–2). The government also agreed to recommend a sentence of no more than 57 months' imprisonment. (ECF No. 22 at 4). Concerning the sentencing guidelines, the government and the defendant have agreed that the defendant's base offense level is 20 under U.S.S.G. §2K2.1(a)(4)(A) and that two (2) levels are added because the specific offense characteristic under U.S.S.G. §2K2.1(b)(4)(A) (for stolen firearms) applies. The government took—and maintains—the position that an additional four (4) levels are added because the specific offense characteristic under U.S.S.G. §2K2.1(b)(6)(B) (for use of a firearm during a felony) also applies: the defendant admitted as part of his guilty plea that he threatened another person with the gun, which is a felony under District of Columbia law. The government has thus calculated the defendant's Final Offense Level as 26 before adjustment for acceptance of responsibility. (ECF No. 22 at 2). The defendant has reserved the right to dispute that the specific offense characteristic under U.S.S.G. §2K2.1(b)(6)(B) applies. (ECF No. 22 at 2).

Sentencing is scheduled for Friday, September 8, 2023, at 10:00 a.m.

### III. <u>LEGAL STANDARD</u>

Although the Sentencing Guidelines are advisory, under *United States v. Booker*, a sentencing court "must consult those Guidelines and take them into account when sentencing."

---

[1] In the plea agreement (ECF No. 22) and proffer (ECF No. 23), the government correctly noted that the maximum penalty for a violation of 18 U.S.C. § 922(g)(1) is 15 years' imprisonment but misattributed the statutory basis for the penalty to 18 U.S.C. § 924(e)(1). The penalty for a violation of 18 U.S.C. § 922(g)(1) is codified at 18 U.S.C. § 924(a)(8) ("Whoever knowingly violates subsection (d) or (g) of section 922 shall be fined under this title, imprisoned for not more than 15 years, or both."). The government regrets this scrivener's error.

543 U.S. 220, 264 (2005); *United States v. Brown*, 892 F.3d 385, 399 (D.C. Cir. 2018). The Supreme Court has noted that while the Guidelines provide "the starting point and the initial benchmark" for sentencing, the district court should consider all the § 3553(a) factors. *Gall v. United States*, 552 U.S. 38, 49–50 (2007). The Guidelines' recommended sentencing range will ordinarily "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Kimbrough v. United States*, 552 U.S. 85, 108–09 (2007).

The listed factors in 18 U.S.C. § 3553(a) include the following:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed –
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> > (B) to afford adequate deterrence to criminal conduct;
> > (C) to protect the public from further crimes of the defendant; and
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for –
> > (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –
> > > (i) issued by the Sentencing Commission . . .; and
> > > (ii) that, . . . are in effect on the date the defendant is sentenced; . . .
>
> (5) any pertinent policy statement –
> > (A) issued by the Sentencing Commission . . . and
> > (B) that, . . . is in effect on the date the defendant is sentenced.
>
> (6) the need to avoid unwarranted sentence disparities among

defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

## IV. SENTENCING GUIDELINES CALCULATION

### A. The Specific Offense Characteristic Under U.S.S.G. §2K2.1(b)(6)(B) Applies.

The government and Probation concur that the specific offense characteristic under U.S.S.G. §2K2.1(b)(6)(B) should apply. As part of his sworn guilty plea, the defendant admitted to a factual proffer describing the following conduct: "According to Victim-1, the defendant then placed his hand on a black handgun and said words to the effect of, 'I'll shoot and stab you.'" (ECF No. 23 at 2). This conduct constitutes a felony under District of Columbia law: either felony threats, in violation of 22 D.C. Code § 1810,[2] or assault with a dangerous weapon, in violation of 22 D.C. Code § 402.[3]

The fact that the factual proffer provides the victim's account of the defendant's conduct does not change the fact that the defendant used this firearm in the commission of a felony. The victim's account appears to have been credible given that, as set out in the factual proffer, his report to the police led to the recovery of defendant's firearm. And importantly, the defendant

---

[2] 22 D.C. Code § 1810 provides: "Whoever threatens within the District of Columbia to kidnap any person or to injure the person of another or physically damage the property of any person or another person, in whole or in part, shall be fined not more than [$50,000] or imprisoned not more than 20 years, or both."

[3] 22 D.C. Code § 402 provides in relevant part: "Every person convicted of assault with intent to commit mayhem, or of an assault with a dangerous weapon, shall be sentenced to imprisonment for not more than 10 years." The D.C. Court of Appeals has long recognized the existence of "intent-to-frighten" assault. *See McGee v. United States*, 533 A.2d 1268, 1270 (D.C. 1988) ("Intent-to-frighten assault, on the other hand, requires proof that the defendant intended either to cause injury or to create apprehension in the victim by engaging in some threatening conduct; an actual battery need not be attempted." (quoting *Robinson v. United States*, 506 A.2d 572, 574 (D.C. 1986))). Under D.C. law, a "dangerous weapon" is "an instrument capable of producing death or serious bodily injury by its manner of use." *Powell v. United States*, 485 A.2d 596, 601 (D.C. 1984). A firearm easily and obviously satisfies this definition.

does not dispute that he threatened the victim with a firearm aboard the Metro train. At his May 18, 2023, change of plea hearing, the defendant, through counsel, disputed the precise language of the threat described in the factual proffer but did not dispute the fact that he had put his hand on the gun and threatened the victim:

> MR. GUILLAUME: Mr. West is correct when he states there's nothing that he would disagree with. He accepts the conduct, namely possessing the gun and being a prohibited person. The only clarification, and this is really just semantics, is at page 2 of the document, the victim report to the police officer towards the bottom of the page with respect to what was actually said, Mr. West doesn't necessarily deny it but he says that these – I think I told Government counsel beforehand indicating this is what the victim told the police officers, not necessarily what was said. **But he does admit to making a threat. Mr. West, that is, does admit to making a threat.**
>
> I think this will become more clear in mitigation. But we don't dispute the sum and substance of this agreement and including that statement. Essentially, he said something to that [e]ffect, not those exact words. So it doesn't, in our view, affect any of his acceptance or anything like that. I just wanted to make that clear to the Court because I will be probably mentioning it in mitigation to a limited extent, but not to say that it didn't happen, because **it did happen**.
>
> THE COURT: Let me make sure I understand you. So the statement you're flagging is the one that says, According to victim one, the Defendant placed his hand on a black handgun and said words to the effect of I'll shoot you and stab you?
>
> MR. GUILLAUME: Correct. Just the shoot and stab you part. **He does admit to putting his hand on the gun. That's not in dispute.** So it's really just that one statement, Your Honor.
>
> THE COURT: So he denies saying that, but he agrees that the victim reported that he said that?
>
> MR. GUILLAUME: Correct. And **he did threaten him**, but there's context which we'll give at the sentencing with respect to the statement he made, that my client made.
>
> THE COURT: So he's agreeing that there was a threat made, not these words precisely?
>
> MR. GUILLAUME: Exactly.

May 18, 2023, Change of Plea Hr'g Tr. 14:15–15:25 (emphases added) (attached as **Exhibit A**).

7

Because the defendant admits to conduct establishing that he "used or possessed any firearm in connection with another felony offense," U.S.S.G. §2K2.1(b)(6)(B), the specific offense characteristic applies, and four (4) levels should be added to the defendant's offense level.

**B. The Defendant's Final Offense Level is 23.**

The government and Probation concur that the Final Offense Level is 23.

The base offense level for Count Two is 20 under U.S.S.G. §2K2.1(a)(4)(A) because, as discussed below, the defendant committed this offense after sustaining a conviction for a controlled substance offense in the District of Columbia Superior Court (Case No. 2014 CF2 010263). Two (2) levels are added under U.S.S.G. §2K2.1(b)(4)(A) because the firearm was stolen. For the reasons set forth above, an additional four (4) levels are added under U.S.S.G. §2K2.1(b)(6)(B) because the defendant possessed a firearm in connection with another felony offense, that is, felony threats or assault with a dangerous weapon. Finally, three (3) levels are deducted for acceptance of responsibility under U.S.S.G. §§3E1.1(a), (b).

The Final Offense Level is thus 23.

**C. The Defendant's Criminal History Category is III, and His Guideline Range Is Thus 57 to 71 Months' Imprisonment.**

The government also concurs with Probation's assessment of the Defendant's criminal history as set forth in the Draft Presentence Investigation Report at pages 7 through 12 (ECF No. 25 at 8–13). As reflected in the Draft PSR and in the table on the next page, the total criminal history score is three (3), establishing a Criminal History Category of III.

With a Criminal History Category of III and a Final Offense Level of 23, the defendant's guideline range is **57 to 71 months' imprisonment**.

| Conviction | Jurisdiction & Docket No. | Date & Sentence | U.S.S.G. Points |
|---|---|---|---|
| Possession with Intent to Distribute a Controlled Substance (Cocaine) While Armed; Offense Committed During Release | District of Columbia Superior Court (2014 CF2 010263) | October 30, 2014: 60 months' imprisonment and five years' supervised release | 3 points (§ 4A1.1(a)) |
| Possession of an Unregistered Firearm; Simple Assault | District of Columbia Superior Court (2012 CF2 020265) | January 2, 2013: 90 days' incarceration, execution of sentence suspended as to all, with one year of supervised probation (on each count) | 1 point (§ 4A1.1(c)) |
| | | Total: | 4 points (Category III) |

## V.   THE GOVERNMENT'S SENTENCING RECOMMENDATION

As stated above, and for reasons that follow, the government respectfully recommends that this Court sentence the defendant to a term of **57 months' imprisonment**, to be followed by three years' supervised release.

### A. Nature and Circumstances of the Offense

The nature and circumstances of this offense are serious and warrant a significant sentence. As a threshold matter, the defendant's possession of a loaded handgun was an inherently dangerous act that placed the community at risk. *See, e.g.*, *United States v. Gassaway*, No. 21-CR-550 (RCL), 2021 WL 4206616, at *3 (D.D.C. Sept. 16, 2021) (collecting cases in this district holding that unlawful firearm possession is dangerous to the public); *United States v. Howard*, No. 20-MJ-181 (BAH), 2020 WL 5642288, at *2–3 (D.D.C. Sept. 21, 2020) (making same observation); *United States v. Cole*, 459 F. Supp. 3d 116, 120 (D.D.C. 2020) (noting that a loaded firearm "has the great potential to escalate into violence"). People carry guns because they intend to use them, and the

9

defendant did use his gun in this case—to threaten another individual aboard a Metro train in downtown Washington, D.C., in the middle of the day. The defendant's actions placed the victim, uninvolved citizens, and the defendant himself at grave risk, as brandishing a firearm creates a highly charged environment and can provoke a lethal response.

Unlawful gun possession is so problematic—particularly by someone who has the defendant's criminal history and who would use a firearm to threaten another person on public transit—because the number of violent crimes committed with guns in the District continues to rise: in the past three years (between August 29, 2020, and August 29, 2023), violent crimes committed with a gun went up by 2,695 compared to the previous three years. *Crime Cards*, Metro. Police Dep't, https://crimecards.dc.gov/all:violent%20crimes/with%20a%20gun/ 3:years/citywide:heat (last visited Aug. 29, 2023). Similarly, the homicide rate has skyrocketed in recent years. *See* Peter Hermann, *Homicides are falling in many big cities. In D.C., they're rising.*, Wash. Post (August 19, 2023, 9:00 a.m.), https://www.washingtonpost.com/dc-md-va/2023/08/19/dchomicides-rising-major-cities/ ("But more than halfway through this year, killings in the District are surging toward numbers not seen in two decades . . . ."). The past two years have seen the highest homicide rates since 2003: In 2022, there were 203 homicides, and in 2021, 226 homicides. *District Crime Data at a Glance: 2023 Year-to-Date Crime Comparison*, Metro. Police Dep't, https://mpdc.dc.gov/page/district-crime-data-glance (last visited Aug. 29, 2023). And 2023 is on track to have the highest homicide rate in over twenty years: There have already been at least 175 homicides in 2023, a 26% increase from this time last year. *Id.* By comparison, in 2012, there were only 88 homicides. *Id.* While the defendant's crimes did not result in the infliction of physical injury upon another, unlawful possession can lead to dangerous consequences, thereby underscoring the need to take such crimes seriously. This is especially true

where, as here, the defendant threatened another person with a loaded gun on public transportation in the middle of the day. In addition, the defendant recklessly ditched the gun in a drainpipe, where it could have been discovered by a child, leading to potentially devastating consequences.

It is also highly concerning that the defendant previously possessed a privately manufactured firearm just a couple of months earlier, in April 2022 (related to Count One, which the defendant acknowledged was based in fact), and that he has two prior convictions—going back ten years—related to the unlawful possession of firearms and the use of those firearms to commit other crimes. The defendant has repeatedly sought out firearms, and his prior convictions and a lengthy sentence have so far been insufficient to deter him from possessing loaded guns and using them in furtherance of criminal activity.

In view of the nature and circumstances of this offense, a sentence of **57 months' imprisonment**—a substantial sentence within the applicable guideline range—is warranted.

### B. The History and Characteristics of the Defendant

Although the defendant has accepted responsibility for his actions in this case, his unlawful possession of a firearm—and his admitted use of that firearm to threaten another person on a Metro train in the middle of the day—is particularly troubling considering his criminal history. As detailed above, the defendant's Criminal History Category is III. The largest contributor to the defendant's criminal history score is his 2014 D.C. conviction for Possession with Intent to Distribute a Controlled Substance While Armed (Cocaine), for which the defendant was sentenced to the five-year mandatory minimum term of imprisonment. The defendant also has an adult conviction in a 2012 Superior Court case in which he threatened his then-girlfriend with a firearm. The nature of the prior offenses demonstrates the defendant's unyielding desire to unlawfully possess firearms, which he then uses in furtherance of other criminal conduct.

### C. The Need for the Sentenced Imposed

In 2013, the defendant was convicted of misdemeanors and received a suspended sentence after threatening his then-girlfriend with a firearm. He continued to seek out and possess firearms, and in 2014 was sentenced to five years in prison for an armed drug trafficking offense. The defendant's experiences with the D.C. Superior Court were insufficient to deter him from again carrying firearms in April and June of 2022. Worse yet, the firearm that the defendant carried in June 2022 was recovered by police only because he used it to threaten another person on a Metro train. A significant term of imprisonment is necessary to incapacitate the defendant and protect the community from his crimes. A substantial prison term is also necessary to deter the defendant from unlawfully possessing firearms in the future.

### D. The Need to Avoid Unwarranted Sentencing Disparities

The government's recommended sentence—a term of **57 months' imprisonment**—would not result in unwarranted sentencing disparities because it is both the mean and median sentence imposed in 99% of cases involving similarly situated defendants. As laid out in the Draft PSR on page 27 (ECF No. 25 at 28), there were 569 defendants whose primary Guideline was §2K2.1 with a Final Offense Level of 23 and a Criminal History Category of III. In 99% of those cases, the average and median length of imprisonment was a term of 57 months. The government's recommendation is in line with the sentences imposed in similar cases and so would not result in an unwarranted sentencing disparity.

## VI. CONCLUSION

For the foregoing reasons, the government respectfully recommends that the Court sentence Defendant John West to a term of **57 months' imprisonment** to be followed by three years of supervised release.

                        Respectfully submitted,

                        MATTHEW M. GRAVES  
                        UNITED STATES ATTORNEY  
                        D.C. Bar No. 481052

Dated: August 29, 2023      By:    */s/ Paul V. Courtney*  
                                                Paul V. Courtney  
                                                D.C. Bar No. 1034252 / N.Y. Bar No. 5392337  
                                                Assistant United States Attorney  
                                                United States Attorney's Office  
                                                for the District of Columbia  
                                                601 D Street NW  
                                                Washington, D.C. 20530  
                                                (202) 252-1719  
                                                paul.courtney@usdoj.gov